FILED

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
#### (Alexandria Division)

2015 AUG -4 P 3: 12

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |  |
|---|---|---|
| **FELIX KUSHNIR** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| **GWEN ELMORE** | ) | Case No. 1:15cv 985 |
| **4104 Wandering Lane NE** | ) | TSE / MSN |
| **Hickory, NC  28601-8775** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CHARLES ELMORE** | ) | |
| **4104 Wandering Lane NE** | ) | |
| **Hickory, NC  28601-8775** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW Felix Kushnir ("Mr. Kushnir", "Buyer" or "Plaintiff"), by and through

undersigned counsel, and as and for his complaint (the "Complaint") against Gwen Elmore and

Charles Elmore ("Sellers" or "Defendants"), states on information and belief after reasonable

investigation as follows:

This action involves claims arising from and relating to the sale of a business, Fun Tours,

Incorporated ("Fun Tours" or the "Company"), from Defendants to Plaintiff and damages incurred

by Plaintiff as a result of one or more material misrepresentations of fact in connection with the

Thomas W. Repczynski, VSB No. 39967
Offit Kurman, P.C.
8000 Towers Crescent Drive, Suite 1500
Tysons Corner, Virginia 22182
(703) 745-1801
(703) 745-1835-Fax
trepczynski@offitkurman.com
*Counsel for Plaintiff*

sale which Defendants had either or both a recognized common law and/or contractual obligation not to make and the resulting impact for which Defendants agreed to indemnify Plaintiff against any losses.

### The Parties and Related Entity

1.      Mr. Kushnir is a natural person who, at all times relevant hereto, has been a citizen and domiciliary of the State of Maryland.

2.      Defendant Gwen Elmore is a natural person who, upon information and belief, at all times relevant hereto has been a citizen and domiciliary of the State of North Carolina.

3.      Defendant Charles Elmore is a natural person who, upon information and belief, at all times relevant hereto has been a citizen and domiciliary of the State of North Carolina.

4.      Fun Tours is a corporation organized and existing pursuant to the laws of the Commonwealth of Virginia, and with its principal place of business located within the jurisdiction of the United States District Court for the Eastern District of Virginia (the "District") at 520 Newton Road, Virginia Beach, Virginia.

### Jurisdiction and Venue

5.      This Honorable Court enjoys original jurisdiction over the instant matter pursuant to Section 1332(a)(1) of Title 28 of the United States Code.

6.      Defendants are domiciled in North Carolina, and the Plaintiff is domiciled in the State of Maryland.

7.      Venue is proper in the District pursuant to Section 1391(b) of Title 28 of the United States Code.

8.      Venue is proper in the District pursuant to the exclusive forum selection clause in Section 13.8 of the parties' Purchase Agreement, as defined hereinafter.

**Background**

9. Fun Tours is a business operating as a full-service charter and bus tour agency providing services in the Commonwealth of Virginia and throughout the United States.

10. Pursuant to a Stock Purchase Agreement dated September 5, 2014 (the "Purchase Agreement"), Mr. Kushnir, as "Buyer", acquired all of the Company Stock and "goodwill" of Fun Tours from the Defendants, as the "record and beneficial owners of all of the issued and outstanding equity securities" of Fun Tours, on September 9, 2014 (the "Closing Date").

11. A complete and accurate copy of the Purchase Agreement, admissible as evidence for any and all purposes, is attached hereto and incorporated herein by reference as Exhibit A.

12. Pursuant to the Purchase Agreement and subject specifically to the terms of Section 2 of the Purchase Agreement, Mr. Kushnir agreed to purchase all of the Company Stock from the Defendants and to pay a separate purchase price for the "goodwill" of the Company.

13. After adjustments allowed under the Purchase Agreement, the total purchase price to be paid by Mr. Kushnir to the Defendants for the purchase of Fun Tours was $3,900,000.00 ("Purchase Price").

14. By negotiated agreement of the parties, the Purchase Price for the Company was determined to be the multiple of 3.49 times the "EBITDA" for the Company. The "EBITDA" for the Company, by definition, was understood by Mr. Kushnir and the Defendants to equal the sum of Net Income, Depreciation, Interest, and Owner's Salary, as these figures are set forth in the separately generated Quicken Books statement of operations for the fiscal year ending March 31, 2014 provided as part of the Purchase Agreement by the Defendants (the "FY2014 Profit & Loss Statement").

15. A complete and accurate copy of the FY2014 Profit & Loss Statement, admissible

as evidence for any and all purposes in these proceedings, is attached hereto and incorporated herein by reference as Exhibit B.

16.     The Fun Tours Financials provided to Mr. Kushnir by the Defendants included a journal entry (identified as Num. 09-953) dated December 31, 2013 ("12/31/13 Journal Entry"), which was shown to credit tour revenue by $278,126.68 and debit tour deposits and retained earnings in the amounts of $66,357.00 and $211,769.68, respectively.

17.     A complete and accurate copy of the General Journal Transaction report reflecting the 12/31/13 Journal Entry, admissible as evidence for any and all purposes in these proceedings, is attached hereto and incorporated herein by reference as Exhibit C.

18.     On June 11, 2015, Mr. Kushnir made demand for indemnity by the Defendants pursuant to Section 11 of the Purchase Agreement for damages incurred by Mr. Kushnir stemming from the Maintenance Matter, the Business License Matter, and the Environmental/OSHA Matter, collectively ("June 11 Indemnity Notice").

19.     A complete and accurate copy of the June 11 Indemnity Notice, admissible as evidence for any and all purposes in these proceedings, is attached hereto and incorporated herein by reference as Exhibit D.


*Undisclosed Deferred Maintenance Matters*

20.     In the period prior to the Closing Date, the Sellers purposefully deferred needed maintenance on the Company's buses and/or instructed the Company's mechanics not to perform maintenance projects known and understood to be required in the ordinary course of business to keep the Company's buses in good repair and operating condition ("Undisclosed Deferred Maintenance Matters").

4

21.     The following Undisclosed Deferred Maintenance Matters were later determined to have existed as of the Closing Date:

     a.  fifteen of seventeen auxiliary heaters ("Pro heaters") on the Company's buses were non-functioning and in need of replacement or repair;

     b.  three side panel bus windows required replacement due to condensation preventing visibility;

     c.  all of the seats on two buses were threadbare and required replacement; and

     d.  four (4) sets of bus brake rotors required replacement.

22.     In addition, also contrary to standard routine maintenance requirements, none of the rear-drive axle or transmission fluids on any of the Company buses had been changed in over three (3) years prior to the Closing Date, and all required replacement.

23.     Sellers knew or should have known of the Undisclosed Deferred Maintenance Matters at the time of the sale, and specifically as of the Closing Date.

24.     None of the Undisclosed Deferred Maintenance Matters constituted "normal wear and tear."

25.     The existence of the Undisclosed Deferred Maintenance Matters at the time of the sale, and specifically as of the Closing Date, rendered untrue the Sellers' representation in Section 3.7(b) of the Purchase Agreement that "the Company's assets ... are in good repair and operating condition (subject to normal wear and tear)."

26.     The existence of the Undisclosed Deferred Maintenance Matters at the time of the sale, and specifically as of the Closing Date, rendered untrue the Sellers' representation in Section 3.7(c) of the Purchase Agreement that "there are no facts or conditions affecting the Company's assets which could, individually or in the aggregate, interfere with the use or

operation thereof as currently used or operated."

27.     The Defendants having told the Company's mechanics not to perform Undisclosed Deferred Maintenance Matters in the ordinary course of business and in the usual manner, and/or their constructive or actual knowledge thereof, rendered untrue at the time of the sale, and specifically as of the Closing Date, the Sellers' representation in Section 3.8(c)(i) of the Purchase Agreement that they had been "operat[ing] the Business only in the usual, regular and ordinary manner."

28.     The existence of the Undisclosed Deferred Maintenance Matters at the time of the sale, and specifically as of the Closing Date, rendered untrue the Sellers' representation in Section 3.8(c)(iii) of the Purchase Agreement that Sellers had "taken all actions reasonably necessary and appropriate to preserve, protect and maintain all of the assets of the Company other than disposable assets in customary repair, order and condition (reasonable wear and tear excepted)."

29.     The total additional expenses incurred by Mr. Kushnir in order to remedy the Undisclosed Deferred Maintenance Matters not otherwise accounted for by the Defendants in the FY2014 Profit & Loss Statement which Defendants provided to Mr. Kushnir as the statement of operations for the Company for the relevant period amounted to $48,167.00 ("Undisclosed Deferred Maintenance Matters Net Income Adjustment Amount").

*Business License Matter*

30.     The Company is required to pay an annual fee of 0.36% of its gross annual receipts to the City of Virginia Beach in order to maintain its business license.

31.     Pursuant to Section 3.5(g) and (h) of the Purchase Agreement, this business

license fee was considered by the parties as having been among the "Taxes" for which the Company is liable.

32.     In 2014, one or both of the Sellers incorrectly completed the City of Virginia Beach business license filing having specified that the gross receipts of the Company for 2014 were $1,551,419.50, when the actual gross receipts of the Company were, on information and belief, more accurately stated as $3,510,742.00.

33.     As a result of one or both of the Sellers having underreported gross receipts for the Company for 2014 to the City of Virginia Beach, the Company underpaid for its business license by $7,054.00.

34.     The failure of one or both of the Sellers to complete properly the City of Virginia Beach Business License return and the resulting failure to pay the correct "Taxes Due" to the City of Virginia Beach (as the term is defined in the Purchase Agreement, rendered untrue at the time of the sale, and specifically as of the Closing Date, the Sellers' representation in Section 3.5 of the Purchase Agreement that the Company had "paid all Taxes Due by a Tax Authority (whether or not shown as due on a filed Tax Return) from or with respect to the Company or its assets or properties."

35.     The total additional expenses relating to the Business License Matter not otherwise accounted for by the Defendants in the FY2014 Profit & Loss Statement which Defendants provided to Mr. Kushnir as the statement of operations for the Company for the relevant period amounted to $7,054.00 ("Business License Matter Net Income Adjustment Amount").

36.     The Undisclosed Deferred Maintenance Matters Net Income Adjustment Amount should have been properly deducted from the Net Income figure reported by the Defendants in

the FY2014 Profit & Loss Statement. Failure to take this amount into account resulted in Defendants' having overstated the Net Income for the Company for the relevant period by a corresponding amount.

37.    The Business License Matter Net Income Adjustment Amount should have been properly deducted from the Net Income figure reported by the Defendants in the FY2014 Profit & Loss Statement. Failure to take this amount into account resulted in Defendants' having overstated the Net Income for the relevant period by a corresponding amount.

38.    The amounts by which Defendants overstated the Net Income figure, taking into account the Undisclosed Deferred Maintenance Matters Net Income Adjustment Amount and the Business License Matter Net Income Adjustment Amount, further served to reduce the calculable EBITDA by corresponding amounts.

39.    Concomitantly, the total reduction to the calculable EBITDA resulting from the Undisclosed Deferred Maintenance Matters Net Income Adjustment Amount and the Business License Matter Net Income Adjustment Amount resulted in Purchase Price overpayments by Mr. Kushnir of $168,102.83 and $24,618.46, respectively.


*Environmental/OSHA Matters*

40.    On information and belief, prior to and as of the Closing Date, Fun Tours failed to comply with Section 608 of the Clean Air Act of 1990 and the refrigerant recycling rules promulgated thereunder (the "Environmental Laws") because, for a period of time, it had been servicing bus air conditioning equipment without a functioning refrigerant recovery machine.

41.    On information and belief, the Company's refrigerant recovery machine was not functioning at the time of the sale, and specifically as of the Closing Date, and had not been

functioning as required under the Environmental Laws since at least April of 2013.

42. The Company's having failed to comply with and operate in compliance with the Environmental Laws at the time of the sale, and specifically as of the Closing Date, rendered untrue Sellers' representations in Section 3.11 of the Purchase Agreement that the Company was operating "in full compliance with all laws, regulations" etc.

43. The Company's having failed to maintain a functioning refrigerant recovery machine and to otherwise comply with and operate in compliance with the Environmental Laws prior to and at the time of the sale, specifically as of the Closing Date, also rendered untrue Sellers' representations in Section 3.16 of the Purchase Agreement regarding compliance therewith.

44. In order to be and operate in compliance with the Environmental Laws, Mr. Kushnir needed to replace the refrigerant recovery machine at a cost of $6,468.00.

45. In addition, when Mr. Kushnir purchased Fun Tours, the Company was also failing to comply with OSHA regulations because the Company was not operating with an eye-washing station in place in the maintenance garage, and the Company was not operating with a fire proof cabinet for storing chemicals in the maintenance garage.

46. The failure to comply with OSHA regulations at the time of the sale, and specifically as of the Closing Date, rendered untrue Sellers' representations in Section 3.11 of the Purchase Agreement that the Company was operating "in full compliance with all laws, regulations" etc.

47. In order for Fun Tours to be and operate in compliance with the OSHA regulations, Mr. Kushnir needed to purchase and install the required eye-washing station and the fire proof cabinet at costs of $768.00 and $455.00, respectively.

48.     With regard to the Environmental/OSHA Matters, Mr. Kushnir was forced to incur a total of an additional $7,691.00 to bring Fun Tours into compliance with federal Environmental Laws and OSHA regulations.

*12/31/13 Journal Entry*

49.     Subsequent to the Closing Date, Mr. Kushnir developed reason to question the validity of the 12/31/13 Journal Entry and on June 11, 2015, notified the Defendants' counsel of his inquiry and requested additional information in this regard ("Inquiry Notice re: 12/31/13 Journal Entry").

50.     A complete and accurate copy of the Inquiry Notice re: 12/31/13 Journal Entry, admissible as evidence for any and all purposes in these proceedings, is attached hereto and incorporated herein by reference as <u>Exhibit E</u>.

51.     Thereafter, Mr. Kushnir confirmed through accounting and legal professionals engaged as agents of the Defendants that the 12/31/13 Journal Entry had been improperly stated and should not have been included in the Fun Tours Financials.

52.     The 12/31/13 Journal Entry served to falsely overstate the Company's revenues, Net Income, and, derivatively, EBITDA for the Company, by an amount equal to $278,126.68 as reflected in the FY2014 Profit & Loss Statement.

53.     As a result of the improper inclusion of the 12/31/13 Journal Entry, the Fun Tours Financials, specifically but without limitation the FY2014 Profit & Loss statement of operations, provided to Mr. Kushnir by the Defendants, with an expectation of his reliance thereon reflected a material overstatement of revenues substantially in excess of 130% and therefore did not "present fairly the results of the Company's operations" for the period ending March 31, 2014.

54. Inclusion of the 12/31/13 Journal Entry by the Defendants among the Fun Tours Financials provided to Mr. Kushnir also constituted an "untrue statement of a material fact" regarding the financial condition of the Company.

55. As a result of Mr. Kushnir's reliance on the misstated financial information provided to him by the Defendants, specifically with regard to the 12/31/13 Journal Entry and those figures derived therefrom, Mr. Kushnir overpaid for the Company in an amount of not less than $970,374.00 and was thereby damaged in an amount equal thereto.

## Count One – Constructive Fraud (12/31/13 Journal Entry)

56. The Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

57. Defendants, Gwen Elmore and Charles Elmore, made false representations of material facts to Mr. Kushnir regarding the income and resulting financial condition of the Company.

58. The FY2014 Profit & Loss Statement for the Company was made available by the Defendants to Mr. Kushnir among the Fun Tours Financials with the expectation that Mr. Kushnir would rely upon the financial information reflected thereon and incorporated therein in calculating the Purchase Price for the Company.

59. Mr. Kushnir did, in fact, rely upon the financial information reflected on and incorporated in the FY2014 Profit & Loss Statement made available to him by the Defendants in calculating the Purchase Price for the Company.

60. As a result of Mr. Kushnir's foreseeable reliance on the misstated financial information provided to him by the Defendants with an expectation that he do so, specifically but without limitation, the 12/31/13 Journal Entry and those figures derived therefrom, Defendants'

misstatements caused Mr. Kushnir to overpay for the Company an amount of not less than $970,374.00.

WHEREFORE, pursuant to Count One, Mr. Kushnir prays this Honorable Court enter judgment against Gwen Elmore and Charles Elmore in favor of Mr. Kushnir in an amount not less than $970,374.00; that Mr. Kushnir be awarded his reasonable attorneys' fees incurred in connection with this suit; that Mr. Kushnir be awarded pre-judgment and post-judgment interest at the legal rate; and for such other and further relief as may be just and proper.

### Count Two – Constructive Fraud (Other Matters)

61.     The Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

62.     Defendants, Gwen Elmore and Charles Elmore made false representations of material facts to Mr. Kushnir regarding the income and resulting financial condition of the Company.

63.     The FY2014 Profit & Loss Statement for the Company was made available by the Defendants to Mr. Kushnir among the Fun Tours Financials with the expectation that Mr. Kushnir would rely upon the financial information reflected thereon and incorporated therein in determining value and the Purchase Price for the Company.

64.     Mr. Kushnir did, in fact, rely upon the financial information reflected on and incorporated in the FY2014 Profit & Loss Statement made available to him by the Defendants in determining value and the Purchase Price for the Company.

65.     As a result of Mr. Kushnir's foreseeable reliance on the misstated financial information provided to him by the Defendants with an expectation that he do so, specifically but without limitation, the Undisclosed Maintenance Matters and those figures derived therefrom, Defendants' misstatements caused Mr. Kushnir to overpay for the Company an amount of not

less than $168,102.83.

66.     As a result of Mr. Kushnir's foreseeable reliance on the misstated financial information provided to him by the Defendants with an expectation that he do so, specifically but without limitation, the Business License Matter and those figures derived therefrom, Defendants' misstatements caused Mr. Kushnir to overpay for the Company an amount of not less than and $24,618.46.

67.     As a result of Mr. Kushnir's foreseeable reliance on the representations in the Purchase Agreement provided to him by the Defendants with an expectation that he do so, specifically but without limitation, the Environmental/OSHA Matters and those figures derived therefrom, Defendants' misstatements caused Mr. Kushnir to overpay for the Company an amount of not less than $7,691.00.

68.     Collectively, as a result of Mr. Kushnir's foreseeable reliance on the misstated financial information provided to him by the Defendants with an expectation that he do so, specifically but without limitation, financial figures regarding the Undisclosed Deferred Maintenance Matters, the Business License Matter, and the Environmental/OSHA Matters, (collectively, "Other Matters"), Defendants' misstatements caused Mr. Kushnir to overpay for the Company an amount of not less than $200,354.00.

WHEREFORE, pursuant to Count Two, Mr. Kushnir prays this Honorable Court enter judgment against Gwen Elmore and Charles Elmore in favor of Mr. Kushnir in an amount not less than $200,354.00; that Mr. Kushnir be awarded his reasonable attorneys' fees incurred in connection with this suit; that Mr. Kushnir be awarded pre-judgment and post-judgment interest at the legal rate; and for such other and further relief as may be just and proper.

### Count Three - Breach of Contract (12/31/13 Journal Entry)

69.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully

set forth herein.

70.    Pursuant to Section 3, with specific reference to Subsections 3.4(a) and (c), of the Purchase Agreement, the Defendants "jointly and severally, represent and warrant" each of the statements therein to be accurate.

71.    Inclusion of the 12/31/13 Journal Entry by the Defendants among the Fun Tours Financials provided to Mr. Kushnir constituted a material breach of the Defendants' joint and several warranty pursuant to Section 3, with specific reference to Subsections 3.4(a) and (c) and 3.22, of the Purchase Agreement.

72.    Inclusion of the 12/31/13 Journal Entry by the Defendants among the Fun Tours Financials provided to Mr. Kushnir also constituted an "untrue statement of a material fact" and, therefore, likewise constituted a material breach of the Defendants' joint and several warranty pursuant to Section 3, with specific reference to Subsections 3.22, of the Purchase Agreement.

73.    Pursuant to Section 11.1 of the Purchase Agreement, Defendants agreed, *inter alia*, to indemnify and hold harmless Mr. Kushnir for any and "all liabilities, losses, claims, damages, . . . costs and expenses (including without limitation reasonable attorneys' fees) . . . ("Damages") sustained, incurred or paid by" Mr. Kushnir "in connection with, resulting from or arising out of, directly or indirectly" any breaches of "any representation or warranty" as set forth herein.

74.    To the extent that Defendants' representations to Mr. Kushnir as set forth herein regarding the Company, its assets, operations, financial condition, etc., are determined to have been incorrect as of the Closing Date, Mr. Kushnir is entitled to recover in full from Defendants any and all Damages sustained, incurred or paid as a result pursuant to the terms of the Purchase Agreement.

WHEREFORE, pursuant to Count Three, Mr. Kushnir prays this Honorable Court enter judgment against Gwen Elmore and Charles Elmore in favor of Mr. Kushnir in an amount not less than $970,374.00; that Mr. Kushnir be awarded his reasonable attorneys' fees incurred in connection with this suit; that Mr. Kushnir be awarded pre-judgment and post-judgment interest at the legal rate; and for such other and further relief as may be just and proper.

### Count Four - Breach of Contract (Other Matters)

75.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

76.     Pursuant to Section 3 of the Purchase Agreement, the Defendants "jointly and severally, represent and warrant" each of the statements therein to be accurate.

77.     Defendants' misstatements relating specifically to the Other Matters caused Mr. Kushnir to overpay for the Company an amount of not less than $200,354.00.

78.     Defendants' misstatements relating specifically to the Other Matters set forth herein each constituted an "untrue statement of a material fact" as that phrase was intended in Subsection 3.22, of the Purchase Agreement.

79.     Pursuant to Section 11.1 of the Purchase Agreement, Defendants agreed, *inter alia*, to indemnify and hold harmless Mr. Kushnir for any and "all liabilities, losses, claims, damages, . . . costs and expenses (including without limitation reasonable attorneys' fees) . . . ("Damages") sustained, incurred or paid by" Mr. Kushnir "in connection with, resulting from or arising out of, directly or indirectly" any breaches of "any representation or warranty" as set forth herein.

80.     To the extent that Defendants' representations to Mr. Kushnir as set forth herein regarding the Company, its assets, operations, financial condition, etc., are determined to have been incorrect as of the Closing Date, Mr. Kushnir is entitled to recover in full from Defendants

any and all Damages sustained, incurred or paid as a result pursuant to the terms of the Purchase Agreement.

WHEREFORE, pursuant to Count Four, Mr. Kushnir prays this Honorable Court enter judgment against Gwen Elmore and Charles Elmore in favor of Mr. Kushnir in an amount not less than $200,354.00; that Mr. Kushnir be awarded his reasonable attorneys' fees incurred in connection with this suit; that Mr. Kushnir be awarded post-judgment interest at the legal rate; and for such other and further relief as may be just and proper.

FELIX KUSHNIR
By Counsel

Date:   August 4, 2015

Thomas W. Repczynski, VSB No. 39967
Offit Kurman, P.C.
8000 Towers Crescent Drive, Suite 1500
Tysons Corner, Virginia 22182
(703) 745-1801
(703) 745-1835-Fax
trepczynski@offitkurman.com
*Counsel for Plaintiff*

4837-1625-4758, v.  1